In the

# United States Court of Appeals
## For the Seventh Circuit

No. 11-2120

KAWASAKI HEAVY INDUSTRIES, LTD.,
also known as KAWASAKI JUKOGYO
KABUSHIKI KAISHA and KAWASAKI
MOTORS MANUFACTURING CORP., U.S.A.,

*Plaintiffs-Appellees,*

*v.*

BOMBARDIER RECREATIONAL PRODUCTS,
INC., and BRP U.S., INC.,

*Defendants-Appellants.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 3:10-cv-00641—**David R. Herndon**, *Chief Judge*.

ARGUED SEPTEMBER 15, 2011—DECIDED OCTOBER 21, 2011

Before FLAUM, MANION, and SYKES, *Circuit Judges*.

FLAUM, *Circuit Judge*. The plaintiffs-appellees, Kawasaki
Heavy Industries, Ltd. and Motors Manufacturing
Corp., U.S.A. (together "Kawasaki"), filed several claims

against appellants Bombardier Recreational Products, Inc. and BRP U.S., Inc. (together "BRP"). Kawasaki also filed claims against BRP's attorneys and Bank of Montreal, a secured lender of BRP. The claims all arise from a settlement agreement between Kawasaki and BRP, and that agreement contains an arbitration clause. Pursuant to the arbitration clause, BRP filed a motion to dismiss or stay all of Kawasaki's claims pending arbitration. Regarding the claims against BRP, the district court held that BRP waived its right to arbitrate. As for the claims against the other parties, the district court held that BRP's attorneys and Bank of Montreal can neither compel arbitration nor be compelled to arbitrate, as they are not signatories to the settlement agreement at issue. Thus, the district court denied BRP's motion to dismiss or stay as it applies to all claims. For the following reasons, we reverse the district court's finding of waiver on the part of BRP and vacate the court's ruling regarding the arbitrability of claims against Bank of Montreal and the attorneys.

## I. Background

The dispute between BRP and Kawasaki originated with several cases filed between February 2006 and April 2007 alleging patent infringement, most notably *Kawasaki Heavy Industries, Ltd. v. Bombardier Recreational Products, Inc. and BRP-US, Inc.*, Case No. 06-cv-222 (E.D.Tex. filed October 3, 2006) (the "Texarkana Litiga-

tion"), which was filed by Kawasaki.[1] In September 2007, the parties agreed in principle to a settlement agreement (the "Settlement Agreement"). The Settlement Agreement required both parties to dismiss their respective lawsuits and includes covenants not to sue for patent infringement. It also includes two important provisions that are central to this case: an alternative dispute resolution provision and a request for a subordination agreement. The alternative dispute resolution provision, or arbitration clause, stated, in pertinent part:

> Any claim, dispute or controversy between the parties arising out of or relating to this Settlement Agreement shall be resolved by first a personal meeting between representatives . . . . Should a resolution fail to be reached through a personal meeting . . . the party asserting such dispute shall provide notice to the other party of its intention to submit the dispute to non-binding mediation . . . . Should a resolution fail to be reached through non-binding mediation . . . each party agrees to submit the dispute to binding arbitration to be held in Dallas, Texas.

The second provision at issue, the subordination clause, required BRP to secure an agreement with Bank of Mon-

---

[1] The others are *Bombardier Recreational Products, Inc. and BRP-US, Inc. v. Kawasaki Heavy Industries, Ltd., et al.,* No. 06-cv-JA-JGG (M.D.Fla filed February 17, 2006) and *Bombardier Recreational Products, Inc. and BRP-US, Inc. v. Kawasaki Heavy Industries, Ltd. et al.,* No. 07-cv-156 (E.D.Tex. filed April 11, 2007), both of which were filed by BRP.

treal, a creditor who holds a security interest over BRP's patent portfolio.[2] The subordination clause states, "BRP shall cause all security agreements between BRP and the Bank of Montreal that affect any and all of the BRP Patents . . . to be made subordinate to this Settlement Agreement." The purpose of this required agreement is to prevent Bank of Montreal from taking BRP's patents free of the Settlement Agreement's covenant not to sue in the event that Bank of Montreal must foreclose upon BRP.

Before executing the Settlement Agreement, Kawasaki requested confirmation that the subordination agreement between BRP and Bank of Montreal was in place. In response to this request, BRP's attorneys, Robert Goethals and Harry Marcus, sent an email stating, "BRP has just received word that Bank of Montreal will agree to subordinate the security interests." Satisfied with this assurance, Kawasaki agreed to execute the Settlement Agreement, which went into effect on March 31, 2008. In accordance with the Settlement Agreement, both parties dismissed their patent suits. Within eight days of the effective date of the Settlement Agreement, however, BRP informed Kawasaki that finalizing the subordination agreement was taking longer than it anticipated, and that BRP would need an additional 15 days to complete and execute the subordination with Bank of Montreal.

---

[2] Bank of Montreal is actually an administrative agent for all of BRP's secured lenders, but for the sake of clarity and simplicity, it will be referred to as BRP's secured lender.

When Kawasaki expressed concern regarding this delay, BRP assured Kawasaki that Bank of Montreal had already agreed to the subordination and that the delay was due solely to the need to work with Bank of Montreal's attorneys on preparing the agreement. Once again satisfied, Kawasaki completed its obligations under the Settlement Agreement shortly thereafter.

On May 14, 2008, BRP informed Kawasaki that it would not provide the subordination agreement detailed in the Settlement Agreement. The parties attempted to settle the dispute informally to no avail. In response to the stalled negotiations, BRP demanded arbitration, but on April 1, 2009, Kawasaki filed a petition in the Texarkana Court—the court where it originally filed its patent claim—seeking to vacate the voluntary dismissal of its former claim and compel BRP to comply with the Settlement Agreement. BRP opposed the motion, arguing two jurisdictional points: (1) the court lacked subject matter jurisdiction given that the dispute about the Settlement Agreement was not related to the underlying and original patent litigation, and (2) the parties agreed to arbitrate all claims arising from or relating to the Settlement Agreement. After briefing from both parties on these issues, the Texarkana Court ultimately agreed with BRP that the court lacked subject matter jurisdiction over a dispute about the Settlement Agreement.[2]

---

[2] In its finding that it lacked jurisdiction, the Texarkana Court stated, "At its core, this is a contract dispute—a dispute about

(continued...)

Kawasaki appealed the Texarkana Court's ruling to the Federal Circuit, and while the appeal was pending, both parties participated in court-mandated mediation. Before the Federal Circuit decided the case, Kawasaki voluntarily dismissed its appeal and filed the present action.

The theory underlying Kawasaki's claims is that either BRP and its attorneys lied about the existence of a sub-ordination agreement with Bank of Montreal or Bank of Montreal reneged on its agreement to subordinate its security interest in the patents. Pursuant to that theory, Kawasaki has requested specific performance of BRP's obligations under the Settlement Agreement or, in the alternative, has asserted claims for breach of con-tract, fraud, fraud in the inducement, negligent misrepre-sentation, and negligence against BRP. It has filed the same claims, with the exception of the breach of contract claim, against Robert Goethals and Harry Marcus, the attorneys that represented BRP during the execution of the Settlement Agreement. Finally, Kawasaki has filed a breach of a third-party beneficiary contract claim and a tortious interference claim against Bank of Montreal. Citing the arbitration clause in the Settlement

---

[2] (...continued)
whether paragraph 3 of the Agreement has or has not been breached by Bombardier. Because this Court, through the parties' supplied stipulation and proposed order of dismissal, neither reserved jurisdiction to enforce the Agreement nor incorporated the terms of the Agreement into its order to dismiss, the Court lacks jurisdiction to hear this dispute."

Agreement, BRP moved to dismiss all of Kawasaki's claims or, in the alternative, stay the claims pending arbitration pursuant to the Federal Arbitration Act. 9 U.S.C. § 1 et seq. Kawasaki opposed the motion by arguing the following: (1) BRP waived its right to arbitrate, and (2) Bank of Montreal, Goethals and Marcus (together "non-signatory parties" or "non-signatories") do not have a right to participate in arbitration, as they were not parties to the Settlement Agreement. The district court agreed and denied BRP's motion to dismiss or stay pending arbitration. BRP appeals.

## II. Discussion

### A. BRP's Waiver of Right to Arbitrate

The arbitration clause at issue covers "[a]ny claim, dispute or controversy between the parties arising out of or relating to [the] Settlement Agreement." Thus, there is no question that the arbitration clause in the Settlement Agreement is broad enough to cover each of Kawasaki's claims against BRP.[3] The only question, then,

---

[3] In passing, Kawasaki suggests that BRP violated a condition precedent to the contract, and thus no enforceable obligations from that contract existed, including the obligation to arbitrate claims. In the same breath, however, Kawasaki cites *Schact v. Beacon Inc. Co.*, which clearly held that a failure to fulfill a condition precedent does not negate the fact that a contractual relationship exists, and thus arbitration is still appropriate in such a situation. 742 F.2d 386, 390 (7th Cir. 1984).

(continued…)

is whether BRP waived its right to arbitrate the claims brought against it.

The district court held that BRP's actions throughout its dispute with Kawasaki were inconsistent with the intent to arbitrate, and thus BRP waived its arbitration right. The court found that BRP's intent to litigate rather than arbitrate was evident from its participation in the Texarkana litigation, the appeal that followed, and the mandatory mediation. The district court further reasoned that BRP exhibited undue delay in seeking arbitration, which is contrary to an intent to arbitrate. While the factual findings that led to the district court's conclusion of waiver are reviewed for clear error, "the question of whether [BRP's] conduct amounts to waiver is reviewed de novo." *Ernst & Young LLP v. Baker O'Neal Holdings, Inc.*, 304 F.3d 753, 756 (7th Cir. 2002).

The Federal Arbitration Act ("FAA") was originally enacted "to reverse the longstanding judicial hostility

---

[3] (...continued)

Kawasaki suggests that the case at hand is different, stating, "[W]here a party immediately breaches an agreement and then fraudulently procures compliance by the non-breaching party with that agreement until such time as the non-breaching party has irrevocably completed performance, then a decision on a condition precedent is one for the courts in the first instance." Kawasaki provides no support for this contention and, in any event, the argument is waived due to lack of development. *Freeman United Coal Min. Co. v. Office of Workers' Compensation Programs, Benefits Review Bd.*, 957 F.2d 302, 305 (7th Cir. 1992).

to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). In furtherance of this goal, the FAA "provides for stays of proceedings in federal district courts when an issue in the proceeding is referable to arbitration, § 3, and for orders compelling arbitration when one party has failed, neglected, or refused to comply with an arbitration agreement, § 4." *Id.* at 25; 9 U.S.C. §§ 3-4. Despite the federal policy favoring arbitration, a contractual right to arbitration can be waived. *St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Prods. Co., Inc.*, 969 F.2d 585, 587 (7th Cir. 1992). That waiver can be either explicit or inferred from a party's actions. *Id.* The parties agree that BRP did not explicitly waive its right to arbitrate, so the question to be answered is whether a waiver of its right to arbitrate can be inferred from BRP's actions.

For waiver of the right to arbitrate to be inferred, we must determine that, considering the totality of the circumstances, a party acted inconsistently with the right to arbitrate. *Sharif v. Wellness Int'l Network, Ltd.*, 376 F.3d 720, 726 (7th Cir. 2004). While several factors are considered in the waiver analysis, diligence or the lack thereof should weigh heavily in the decision. *Cabinetree of Wisconsin v. Kraftmaid Cabinetry*, 50 F.3d 388, 391 (7th Cir. 1995). Other factors that we consider include whether the allegedly defaulting party participated in litigation, substantially delayed its request for arbitration, or participated in discovery. *St. Mary's*, 969 F.2d at

589-91. Some circuits require a showing that the non-waiving party was prejudiced by its reliance on the litigious behavior of the waiving party in order to find waiver. *See, e.g., J & S Const. Co., Inc. v. Travelers Indem. Co.*, 520 F.2d 809, 809-10 (1st Cir. 1975). Though we do not require a showing of prejudice to find waiver, it is a relevant factor in the totality-of-the-circumstances analysis. *St. Mary's*, 969 F.2d at 590. Kawasaki first argues that BRP's participation in the Texarkana litigation illustrated BRP's desire to present the dispute to a judicial decision maker, thus contributing to a finding of waiver. Participation in litigation is considered in the waiver determination in order to ensure that the proper forum for a dispute is established as early as possible. This policy prevents parties from waiting to see how they fare in a judicial forum before choosing arbitration, prevents the duplicative adjudication of disputes, and prevents the undue prejudice that results from a party spending time and money on litigation that will not ultimately resolve a case. The key determination when considering this factor, therefore, is whether a party manifested an intent to proceed with litigation. *Cabinetree*, 50 F.3d at 390. We have held that when a party chooses to proceed in a judicial forum, there is a rebuttable presumption that the party has waived its right to arbitrate. *Id*.

Kawasaki argues that BRP chose to proceed in a non-arbitral forum by submitting briefs in the Texarkana litigation, participating in court-mandated mediation, and participating in the appeal to the Federal Circuit, and thus BRP presumptively waived its right to arbitrate

under *Cabinetree*. In *Cabinetree*, a defendant had a case removed to federal court and upon removal, participated in extensive discovery. *Cabinetree*, 50 F.3d at 389. We held that the defendant's choice to remove the case to federal court and participate in discovery was a choice to proceed before a non-arbitral tribunal, triggering a presumption of waiver. *Id.* at 390-91. Since the defendant did not overcome this presumption, it was deemed to have waived its right to arbitrate. *Id*.

Contrary to the defendant in *Cabinetree*, BRP did not commit to a non-arbitral resolution of its dispute with Kawasaki, and thus did not trigger the presumption of waiver. First, BRP did not file a claim or motion in—nor remove a case to—the Texarkana Court. BRP merely responded to Kawasaki's motion to reopen litigation, which cannot be characterized as a choice for judicial resolution of the dispute. Second, BRP did nothing to suggest that it was willing to have the Texarkana Court decide the merits of its dispute with Kawasaki. Neither the district court's opinion nor Kawasaki's brief suggest that BRP even made mention of the merits in its briefing to the Texarkana Court; BRP simply challenged the court's jurisdictional ability to hear Kawasaki's claim. In fact, one of BRP's arguments against the Texarkana Court's jurisdiction was that the case belonged in arbitration instead of the courts. It is evident, therefore, that BRP did not "proceed with litigation," and thus no presumption of waiver should be applied.

Kawasaki also attempts to analogize this case to *St. Mary's*, where we held that the defendant's filing of

a motion to dismiss or for summary judgment—which was based on a contractual limitation period barring recovery—constituted a decision to proceed with litigation. 969 F.2d at 589. We reasoned that, regardless of whether a motion based on a contractual limitation period is a motion "on the merits," a party that makes such a motion is "[s]ubmitting [the] case to the district court for decision," which is inconsistent with the desire to arbitrate. *Id*. We further discussed the important difference between a mere motion to dismiss and a motion for summary judgment, the resolution of which would "end[] the case just as surely as a judgment entered after a trial." *Id*. Unlike the motion submitted by the defendant in *St. Mary's*, BRP's brief arguing against Texarkana's jurisdiction can in no way be construed as submitting the case to the court for a decision that resolves the dispute. Nor did BRP's argument infringe on Kawasaki's right to continue to pursue its claims in a proper forum. Despite Kawasaki's arguments to the contrary, the lines drawn by *St. Mary's* suggest that BRP's actions fall short of any meaningful participation in litigation for the purposes of waiver analysis. This conclusion is bolstered by our more recent case law, where we have held that a party does not waive its right to arbitrate by filing a motion to dismiss.[4] *Faulkenberg v.*

---

[4] While BRP's brief opposing Kawasaki's petition to reopen the Texarakana litigation was not, strictly speaking, a motion to dismiss, it was the functional equivalent of a motion to dismiss based on lack of jurisdiction, given that BRP could not

(continued...)

*CB Tax Franchise Systems*, 637 F.3d 801, 807 (7th Cir. 2011); *see also Sharif v. Wellness Int'l Network, Ltd.*, 376 F.3d 720, 726 (7th Cir. 2004) ("[I]t is well-established that a party does not waive its right to arbitrate merely by filing a motion to dismiss."). Thus, unlike the defendants in *Cabinetree* and *St. Mary's*, BRP did not proceed with litigation in a manner inconsistent with the intent to arbitrate.

As for BRP's participation in Kawasaki's appeal to the Federal Circuit and the accompanying mandated mediation, they cannot add any weight to the allegation that BRP waived its right to arbitrate. BRP's failure to participate in either the appeal or the mediation would have resulted in a default judgment in favor of Kawasaki. If BRP could challenge the Texarkana Court's jurisdiction without waiving its right to arbitrate—as we have said it can—it would be backwards to then hold that defending the Texarkana Court's dismissal on appeal is inconsistent with the intent to arbitrate. Regarding the mediation, not only does the same argument apply, but the arbitration clause in the Settlement Agreement actually calls for mediation before arbitration takes place, making mediation clearly consistent with the parties' arbitration agreement. Thus, BRP's participation in the appeal and mediation that followed the Texarkana litigation does not serve to waive BRP's right to arbitrate.

---

[4] (...continued)
have moved to dismiss a case that had already been dismissed voluntarily.

Kawasaki next argues that BRP waited two years before it requested arbitration, and that this undue delay further counsels in favor of a finding of waiver. As Kawasaki rightly points out, we stated in *Cabinetree* that a party must do all that it can reasonably be expected to do to determine as early as possible whether to proceed through arbitration or the courts. *Cabinetree*, 50 F.3d at 391. But in *Cabinetree*, the defendant "dropped a bombshell" by invoking its right to arbitration after significant delay, *Cabinetree*, 50 F.3d at 389, for which the defendant had no explanation. *Id*. at 391. Similarly, we found in *St. Mary's* that the defendant's ten-month delay between the plaintiff's filing of a claim and the defendant's motion to stay for arbitration was inconsistent with the intent to arbitrate, especially since the defendant "never even mention[ed] arbitration until after it lost its motion [to dismiss or for summary judgment]." *St. Mary's*, 969 F.2d at 589. BRP's "delay" in asserting its right to arbitration differs drastically from the delay exhibited by the defendants in *Cabinetree* and *St. Mary's* in two important respects. First, the defendants in *Cabinetree* and *St. Mary's* failed to assert their right to arbitrate for extended periods of time all during the same pieces of litigation. Conversely, BRP's delay in the *current* litigation was nil. The alleged delay is the result of time spent arguing in Texarkana, not this court. Second, BRP's assertion of its right to arbitrate was not out of the blue. Unlike the defendants in *St. Mary's* and *Cabinetree*, BRP mentioned its desire to arbitrate at every turn. Beyond simply informing Kawasaki that it wanted any claims settled in arbitration, BRP actually argued,

in open court, that the dispute belonged in arbitration. Given this candidness, it is hard to see how Kawasaki could have believed that BRP did not desire arbitration.

Kawasaki concedes that BRP mentioned the possibility of arbitration early in the dispute. But Kawasaki argues that BRP should have filed a motion to stay pending arbitration or to compel arbitration with the Texarkana Court if it truly intended to arbitrate.[5] Both of these motions, however, were not only unnecessary to retain the right to arbitrate—they would have been impossible for the Texarkana Court to grant. With regard to a motion to compel, the Texarkana Court did not have the authority to compel arbitration under the FAA. Section 4 of the FAA provides parties with the right to

---

[5] In support of this claim, Kawasaki relies on *Briggs & Stratton v. Local 232, Int'l Union, AFL-CIO* for the proposition that noting the existence of an arbitration clause does not compel the inference that the party wishes to arbitrate. 36 F.3d 712, 716 (7th Cir. 1994). This reliance, however, is misplaced. First, in *Briggs*, there was actual evidence intimating that neither party wanted to arbitrate, suggesting that a mention of the arbitration clause did not equal a desire to arbitrate. *Id.* at 715-16. Second, the arbitration clause in *Briggs* was elective, stating that a party *may*, not must, submit a dispute to arbitration. *Id.* A putative plaintiff bound by an elective arbitration clause has a choice between arbitration and court, unless the opposing party has *affirmatively* invoked the arbitration clause by filing a claim in arbitration or signaling its intent to do the same. A plaintiff subject to a mandatory arbitration clause, on the other hand, is bound by that agreement unless the opposing party has waived its right to arbitrate.

compel arbitration, 9 U.S.C. § 4, but if an arbitration clause contains a choice of venue provision, only a court within the same district of that venue can enter an order compelling arbitration. *Haber v. Biomet, Inc.*, 578 F.3d 553, 558 (7th Cir. 2009), citing *Merrill Lynch, Pierce, Fenner & Smith v. Lauer*, 49 F.3d 323, 327 (7th Cir. 1995). If the Texarkana Court did not have the power to grant a certain motion, BRP could not have been required to submit that motion to prevent waiver.

While courts cannot grant a § 4 order to compel arbitration unless they sit in the same district as the arbitration venue, a § 3 order to stay pending arbitration has no such requirement. Nonetheless, the Texarkana Court could not have issued a § 3 order, nor should BRP have been required to submit such a motion to prevent the waiver of its right to arbitrate. First, as the Texarkana Court indicated in its ruling, it did not have jurisdiction over claims about the Settlement Agreement between Kawasaki and BRP.[6] When a court grants a § 3 stay pending arbitration, it retains jurisdiction over a matter so that it can effectuate the decision of an arbitrator or handle additional matters or claims that were not subject to arbitration. Therefore, the Texarkana Court would still need jurisdiction over a Settlement Agree-

---

[6] That is not to say that the Texarkana Court *could not* have had jurisdiction over a dispute regarding the Settlement Agreement; it merely lacked jurisdiction under the patent case that Kawasaki had originally filed and was attempting to reopen. We decline to comment on whether Texarkana could have had jurisdiction over a newly filed claim.

ment claim to order a stay. Since the FAA itself does not provide a jurisdictional basis, *Vaden v. Discover Bank*, 556 U.S. 49, ___, 129 S. Ct. 1262, 1271 (2009), and the Texarkana Court did not have an independent jurisdictional basis, the court did not have the power to grant a stay pending arbitration under the FAA. Thus, BRP could not have been granted a motion to stay.

But even if, arguendo, the Texarkana Court *did* have the power to grant a motion to stay, BRP should not have been required to file that motion in order to prevent the waiver of its arbitration right. We stated in *Cabinetree*, "A defendant who wants arbitration is often content with a stay, since that will stymie the plaintiff's effort to obtain relief unless he agrees to arbitrate." 50 F.3d at 389. Similarly, an appropriate motion to dismiss (or an argument against jurisdiction, as the case may be) stymies a plaintiff's attempt at judicial relief and is consistent with the intent to arbitrate, especially when that motion includes an argument that the case belongs in arbitration. The waiver determination is not based on whether a party has jumped through the proper technical hoops, but rather is a totality-of-the-circumstances analysis that aims to ascertain whether a party intended to abandon the right to arbitrate by submitting a dispute to the courts, or at least acted in such a way. Even if a motion to stay pending arbitration in the Texarkana Court would have been the most expeditious path to arbitration, a declaration that the case should be dismissed and sent to arbitration is just as effective in signaling BRP's desire to arbitrate rather than litigate.

BRP's failure to file a § 3 motion to stay pending ar-bitration or a § 4 motion to compel arbitration does not constitute undue delay. BRP has consistently stated that it is prepared to arbitrate Kawasaki's claims. BRP does not itself have any claims to settle, and if Kawasaki wants to take issue with BRP's performance, it is enough for BRP to avoid substantive litigation activity and indicate that it is not forgoing its right to arbitrate.

Finally, Kawasaki correctly asserts that in this Circuit, "waiver may be found absent a showing of prejudice," though prejudice is a relevant consideration. *St. Mary's*, 969 F.2d at 590, quoting *Nat'l Found. for Cancer Research v. A.G. Edwards & Sons*, 821 F.2d 772, 777 (D.C. Cir. 1987). Prejudice is only considered, however, when it results from "the conduct allegedly constituting waiver." *Dickinson v. Heinold Securities, Inc.*, 661 F.2d 638, 641 n. 5 (7th Cir. 1981); *see also Cabinetree*, 50 F.3d at 391 (ex-plaining that prejudice "should weigh heavily in the decision" when an allegedly defaulting party proceeds in a judicial forum but the circumstances may none-theless counsel against a finding of waiver). Here, BRP's actions were wholly consistent with the intent to arbi-trate. There was therefore no conduct constituting waiver which could have prejudiced Kawasaki, so prejudice is a non-factor in this case.

As evidenced in the above analysis, BRP has not only acted consistently with an intent to arbitrate Kawasaki's claims, but BRP has continually voiced its desire to arbi-trate. Accordingly, we reverse the district court's denial of BRP's motion to stay the proceedings pending arbitra-tion as it applies to the claims against BRP.

**B. Non-Signatory Parties' Right to Arbitrate**

BRP's motion sought to dismiss or stay not only Kawasaki's claims against BRP, but also Kawasaki's claims against the Bank of Montreal, against Marcus, and against Goethals despite the fact that none of these parties were signatories to the Settlement Agreement. BRP argued that the claims against the non-signatory defendants were so intertwined with the Settlement Agreement that the non-signatories should be able to enforce the arbitration clause against Kawasaki. The district court held that the claims against Bank of Montreal, Marcus, and Goethals are not substantially the same as, or intertwined with, the claims against BRP, and thus the non-signatories could not compel Kawasaki to arbitrate. The district court also held that BRP did not successfully advance any theory under which the non-signatories could be compelled to arbitrate by Kawasaki.

Regardless of whether any of the non-signatory parties have a right to enforce the arbitration clause or can be forced to arbitrate themselves, this is not a justiciable matter. For one, BRP lacks standing to protect the non-signatory defendants' rights. The Supreme Court has continually held that third-party standing is, on the whole, inappropriate. *See, e.g., Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004) ("[The Supreme Court has] adhered to the rule that a party generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." (internal quotation omitted)). The exception to this rule requires a party seeking third-party standing to show, inter

alia, that the possessor of the right is somehow hindered from protecting her own interests. *Id*. at 130. BRP has not attempted to make this showing, and thus, BRP cannot argue on behalf of the non-signatories' rights, whether or not those rights exist.

The issue of whether the arbitration clause can or must apply to the non-signatory parties is also not ripe for review. Under Article III of the United States Constitution, there must be an actual dispute between parties with adverse legal interests for a court to hear a case or issue. *Rock Energy Co-op v. Vill. of Rockton*, 614 F.3d 745, 748 (7th Cir. 2010) citing *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). Here, Kawasaki has explicitly said that it wants to litigate its claims and does not want to arbitrate. There is no evidence in the record that the non-signatory parties have any interest in arbitrating Kawasaki's claims. Thus, a determination of whether the non-signatories can enforce the arbitration clause or have it thrust upon them would be nothing more than an advisory opinion to be used as guidance on the chance that one party decides to change course and attempt arbitration. *Deveraux v. City of Chicago*, 14 F.3d 328, 330 (7th Cir. 1994) (reaffirming that federal courts do not have the power to render advisory opinions).

Given that BRP does not have standing to assert the non-signatory parties' rights, and given the fact that the issue is not ripe for review, the district court's holding that the non-signatory parties can neither force arbitration nor be forced to arbitrate is vacated. It is entirely possible that Kawasaki will want to arbitrate

its claims against the non-signatory parties now that it may be arbitrating its claims against BRP.[7] This battle, however, must be fought by the interested parties— Kawasaki and the non-signatories.

## III. Conclusion

For the foregoing reasons, the district court's denial of BRP's motion to stay proceedings is REVERSED as it applies to the claims against BRP and VACATED as it applies to the claims against the non-signatory parties.

---

[7] BRP rightly asserts that the mere presence of the non-signatory parties does not affect BRP's right to arbitrate. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 (1983) ("Under the Arbitration Act, an arbitration agreement must be enforced notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement."). Thus, if Kawasaki still wants to bring its claims against BRP, it will need to settle for arbitration, barring a change of course on BRP's part.