

FILED

Dec 27 2023, 8:52 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANTS

Maggie L. Smith
Joshua N. Kutch
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

David L. Guevara
James R. A. Dawson
Indianapolis, Indiana

Heather M. Hawkins
Cincinnati, Ohio

IN THE

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Professional Construction, Inc., and West Bend Mutual Insurance Company, *Appellants-Defendants,* <br><br> v. <br><br> Historic Walnut Square, LLC, *Appellee-Plaintiff* | December 27, 2023 <br><br> Court of Appeals Case No. 23A-PL-654 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Heather A. Welch, Judge <br><br> Trial Court Cause No. 49D01-2206-PL-21757 |

**Opinion by Chief Judge Altice**
Judges May and Foley concur.

**Altice, Chief Judge.**

## Case Summary

Professional Construction, Inc. (Contractor) and West Bend Mutual Insurance Company (Surety) (collectively, Appellants) bring this interlocutory appeal of the trial court's denial of their motion to enforce arbitration agreement and stay litigation in a lawsuit brought by Historic Walnut Square, LLC (Owner). Appellants present the following restated issues for review:

1. Did the trial court properly determine that Contractor waived its contractual right to demand arbitration by filing suit against Owner in Wisconsin?

2. Did the trial court err by determining that Surety had no right to enforce the arbitration provision in the construction contract?

3. Where is the proper venue for arbitration?

We reverse and remand.

## Facts & Procedural History

In 2020, Owner solicited bids for a construction project for the development of a forty-unit, multi-family housing project in Terre Haute and ultimately selected Contractor as general contractor for the project. On August 6, 2020, they executed two standard form American Institute of Architects (AIA) agreements, A101-2017 and A201-2017 (collectively, the Construction Contract). Additionally, Contractor obtained a Payment Bond and a

Performance Bond (collectively, the Bonds), also AIA standard form agreements, through Surety in the amount of the Construction Contract.

[4] The Construction Contract provides for binding arbitration, pursuant to § 15.4 of AIA Document A201-2017, of any claim subject to or not resolved by mediation and expressly indicates that the Federal Arbitration Act (the FAA) shall govern. § 15.4.1 provides in relevant part:

> [A]ny claim subject to, but not resolved by, mediation shall be subject to arbitration which, unless the parties mutually agree otherwise, shall be administered by the American Arbitration Association in accordance with its Construction Industry Arbitration Rules in effect on the date of the Agreement. The Arbitration shall be conducted in Fond du Lac County, Wisconsin unless expressly prohibited by law, in which case mediation [sic] shall be held in the place where the Project is located, unless another location is mutually agreed upon. A demand for arbitration shall be made in writing, delivered to the other party to the Contract, and filed with the person or entity administering the arbitration.

*Appellants' Appendix Vol. 2* at 111. Further, pursuant to § 15.4.3, the agreement to arbitrate "shall be specifically enforceable under applicable law in any court having jurisdiction thereof." *Id*.

[5] Certain contractual disputes arose between Contractor and Owner and came to a head in the beginning of 2022. The details of the disputes are not particularly relevant here; our focus is on the parties' attempts to resolve them. Contractor initially communicated its claim to the architect (Architect) – the project's initial decision maker under the Construction Contract. Unsatisfied with

Architect's decision and anticipating a breach of the Construction Contract by Owner, Contractor stopped work on the project on February 11, 2022. Owner then declared Contractor in default and made a claim against Surety on the Performance Bond.

[6] On February 14, 2022, Contractor (by email and certified mail) sent a written demand for mediation/arbitration to Owner and Architect. After setting out Contractor's position in detail, the letter concluded with the following:

**Demand for Mediation/ Arbitration**

Given the Owner's position, and the Architect's decision to affirm the Owner's position, concerning the substantial completion date, pursuant to §§ 15.3 and 15.4 of the Construction Contract, PCI **hereby demands mediation and arbitration of the current dispute** between the parties.

Pertinent sections dealing with mediation and arbitration in the Construction Contract, call for mediation to be administered by the American Arbitration Association ("AAA"). We are not opposed to this prescription, however, due to the likely urgency of the matter, PCI would consider using an alternate mediation agency or mediator. Please advise on your position on this as soon as possible. If we do not hear back from you by February 17, 2022, we will assume the Owner's preference is to have the matter handled by an AAA mediator, and we will file the mediation/ arbitration demand with the AAA.

*Appellants' Appendix Vol. 3* at 46 (emphases in original).

[7] Surety quickly followed Contractor's demand for mediation/arbitration with a letter to Owner requesting a meeting in Wisconsin with decision makers for all parties present, along with Architect. On February 23, Owner responded and proposed "a meeting that does not involve the Contractor or the sideshow of topics, such as liquidated damages, which are unrelated to the immediate goal of performing and completing the Construction Contract." *Id*. at 22.

[8] On February 27, Surety wrote Owner again and emphasized that there were issues between Owner and Contractor that were "worth mediating" and that resolving these issues was "critical" to Surety's decision regarding the claim on the Performance Bond. *Id*. at 25, 26. Surety proposed that all parties meet on March 4 and agree to prompt mediation of any issues not resolved at that meeting.

[9] On March 1, Owner responded that it would not entertain Contractor's input in the matter between Owner and Surety, explaining in part:

> Right now, and while the Owner attempts to recover the Project from the Contractor's defective, untimely performance, there is nothing to mediate. The Owner is open to negotiations and engaging a third party mediator to resolve any remaining claims, but only after the Owner and Surety have all of the relevant information, the Surety performs its obligations under the Performance Bond, and the Work is complete. It is only then that the parties may be able to bring this matter to a full, final resolution. Mediation efforts now would be premature and waste precious time.

*Id*. at 30.

[10] On April 17, 2022, Surety denied Owner's claims on the Bonds and provided a detailed explanation of its denial. In summary, Surety claimed that Owner had repudiated the Construction Contract prior to Contractor justifiably stopping work and that Owner's subsequent refusal to mediate or arbitrate the dispute between Contractor and Owner also constituted a breach of the Construction Contract.

[11] Two days after Surety's denial of Owner's claims, Contractor filed a four-count complaint against Owner in Waukesha County, Wisconsin[1] (the Wisconsin Action), and named Surety as an involuntary plaintiff. Relevant here, the complaint alleged that Owner had refused Contractor's written demand for mediation/arbitration of the claims and disputes arising out of the Construction Contract and that "[b]ecause of [Owner's] contractual breaches and refusal to mediate or arbitrate, [Contractor] has been left with no recourse except litigation to seek resolution of the claims." *Appellants' Appendix Vol. 2* at 176. Among its specific requests for relief, Contractor asked the Wisconsin court for: "Order compelling [Owner] to comply with the Contract's mediation and arbitration clauses as it relates to all claims arising of the contract." *Id.* at 179.

[12] Two months after the Wisconsin Action was filed, Owner filed the instant complaint in Marion County, Indiana, on June 29, 2022, against Contractor and Surety (the Indiana Action). Owner asserted breach of contract and other associated claims and argued that Indiana was the proper venue for litigation related to the Construction Contract and the Bonds. Owner's complaint for damages made no mention of the dispute resolution provisions in the Construction Contract.

[13] On July 1, 2022, in the Wisconsin Action, Owner filed a motion to stay or, in the alternative, dismiss without prejudice. Owner argued that Indiana was the

---

[1] Contractor, Owner, and Surety are each organized under the laws of Wisconsin with their principal places of business there.

more convenient forum to address the parties' claims that all "relate to disputes concerning the interpretation and enforcement of the Construction Contract and Bonds, which relate to the Project in Indiana." *Id*. at 196.

[14] Contractor responded in both pending actions to Owner's attempt to litigate the contractual disputes in Indiana. First, in the Wisconsin Action, Contractor filed a motion to compel arbitration. Second, in the Indiana Action, it filed jointly with Surety a motion to enforce arbitration agreement and stay litigation pending arbitration. Owner opposed both motions on two bases: 1) Contractor did not satisfy the mandatory conditions precedent to trigger arbitration under the Construction Contract and 2) Contractor waived its right to enforce the arbitration provision by filing the Wisconsin Action.[2]

[15] The Wisconsin court was the first to hold a hearing and decide the motions pending before it. At the conclusion of the hearing on February 10, 2023, the Wisconsin court ordered Owner and Contractor to arbitration in Wisconsin. This order was based on three conclusions by the court: 1) Contractor did not waive its right to arbitration by filing its complaint, which was "in essence, a suit to enforce the arbitration clause"; 2) matters of procedural arbitrability, such as whether conditions precedent have been satisfied, are for the arbitrator

---

[2] In the Indiana Action, Owner additionally argued that Surety did not have a contractual right to compel arbitration of Owner's claims under the Bonds.

to decide; and 3) the proper venue for the arbitration is Wisconsin.[3] *Appellants' Appendix Vol. 3* at 112. Owner did not appeal the Wisconsin court's arbitration ruling, which was reduced to written order on March 6, 2023.

[16] In the meantime, a hearing was held in the Indiana Action on February 23, 2023, to address Appellants' motion to enforce arbitration agreement and stay litigation pending arbitration. The trial court denied the motion and issued a written order that same day. Specifically, the trial court determined that Contractor waived its contractual right to arbitration by initiating the Wisconsin Action rather than filing for mediation or arbitration with the AAA. Further, the court determined that Appellants could not "get around" Contractor's waiver by arguing that Surety had a right to enforce the arbitration provision in the Construction Contract. *Appellants' Appendix Vol. 2* at 24. The trial court denied Appellants' subsequent request to reconsider its ruling regarding arbitration.

[17] Appellants now appeal the trial court's February 23, 2023 interlocutory order as a matter of right pursuant to Ind. Appellate Rule 14(D) and Ind. Code § 34-57-2-19(a)(1).[4] Additional information will be provided below as needed.

---

[3] The parties agreed that the arbitration order would not extend to Surety. However, Surety acknowledged that it would be bound by any contractual determinations made by the arbitrator regarding the Construction Contract.

[4] During the pendency of this appeal, the arbitration process began in Wisconsin. On July 28, 2023, Owner filed with the arbitrator a motion to stay the arbitration pending resolution of this appeal. The arbitrator denied this request on October 25, 2023, and directed the arbitration to proceed expeditiously.

## Standard of Review

Our Supreme Court has made clear that we do not defer to a trial court's decision on a motion to compel but rather review it de novo. *Decker v. Star Fin. Grp., Inc.*, 204 N.E.3d 918, 921 (Ind. 2023); *Doe v. Carmel Operator, LLC*, 160 N.E.3d 518, 521 (Ind. 2021). And we have applied this standard of review when determining whether a party waived its contractual right to request arbitration.[5] *Welty Bldg. Co. v. Indy Fedreau Co., LLC*, 985 N.E.2d 792, 798 (Ind. Ct. App. 2013) (observing that although waiver is generally a question of fact, we review de novo a trial court's ruling on a motion to compel arbitration). This is especially true where, as here, "to the extent the trial court had to resolve a 'factual' issue regarding waiver, it did so based entirely upon a paper record." *Id.*

## Discussion & Decision

## 1. Waiver of Contractual Right to Demand Arbitration

The parties do not dispute that the traditional threshold issues of arbitrability have been met in this case. That is, Owner and Contractor agreed in the Construction Contract to arbitrate, and their agreement covers the particular

---

[5] We reject Owner's invitation to adopt a different standard of review, a clear error standard. Moreover, contrary to Owner's apparent suggestion on appeal, the Seventh Circuit does not review a district court's ultimate waiver determination in this context for clear error. *See Cooper v. Asset Acceptance, LLC*, 532 F. App'x 639, 641 (7th Cir. 2013) ("While the factual findings that led to the district court's conclusion are reviewed for clear error, 'the question of whether [Asset's] conduct amounts to waiver is reviewed de novo.'") (quoting *Kawasaki Heavy Indus., Ltd. v. Bombardier Recreational Prods., Inc.*, 660 F.3d 988, 994 (7th Cir. 2011)).

controversy at issue. Their disagreement is focused on whether Contractor waived its right to demand arbitration by pursuing the Wisconsin Action.

## 1.1 Is Waiver by Litigation Conduct an Issue for the Court to Decide?

Directing us to the following language by the U.S. Supreme Court, Contractor argues that the waiver determination must be made by the arbitrator, not the court:

> The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, **whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability**.

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) (emphasis added); *see also BG Grp., PLC v. Republic of Argentina*, 572 U.S. 25, 34-35 (2014) (explaining that courts presume that parties intend for arbitrators, not courts, to decide "procedural matters includ[ing] waiver, delay, or a like defense to arbitrability") (internal quotations omitted); *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) (recognizing the presumption that "the arbitrator should decide allegations of waiver, delay, or a like defense to arbitrability") (internal quotations and brackets omitted); *Lumbermens Mut. Cas. Co. v. Broadspire Mgmt. Servs., Inc.*, 623 F.3d 476, 480 (7th Cir. 2010) ("Under *Howsam*, questions such as whether prerequisites to arbitration have been met, or questions of waiver, delay, or other defenses to arbitrability, should be determined by the arbitrator.").

The flaw with Contractor's argument is that it improperly lumps waiver by litigation conduct in the same bucket as waiver in the contractual sense. The United States District Court for the Northern District of Illinois thoroughly addressed the two distinct meanings of the word "waiver" and rejected the same argument asserted by Contractor:

> The pertinent meaning here concerns waiver through litigation conduct or delay. The second meaning refers to a doctrine of contract law under which "the conduct of the party" shows an "intentional relinquishment of a known right." *Ryder v. Bank of Hickory Hills*, 585 N.E.2d 46, 49 (Ill. 1991); *see also Abellan v. Lavelo Prop. Mgmt., LLC*, 948 F.3d 820, 830 (7th Cir. 2020) (explaining that the waiver defense "admits the alleged breach but can defeat a remedy"). Closely related to this second meaning of waiver is the equitable defense of laches, which the Supreme Court of Illinois has defined as "a neglect or omission to assert a right, taken in conjunction with a lapse of time of more or less duration, and other circumstances causing prejudice to an adverse party." *Sundance Homes, Inc. v. Cnty. of DuPage*, 746 N.E.2d 254, 262 (Ill. 2001). Like the contractual doctrine of waiver, laches "bars the remedy but does not discharge the right." *Halcon Int'l, Inc. v. Monsanto Austl. Ltd.*, 446 F.2d 156, 159 (7th Cir. 1971).

> *Moses Cone* concerned the contractual meaning of waiver, not the litigation conduct meaning. Although the Seventh Circuit has not expressly so held, it has continued after *Moses Cone* and *Howsam* to address whether a party invoking an arbitration clause has waived arbitration through litigation conduct or delay. *See, e.g.*, *Brickstructures, Inc. v. Coiaster Dynamix, Inc.*, 952 F.3d 887, 891 (7th Cir. 2020); *Smith v. GC Servs. Ltd. P'ship*, 907 F.3d 495, 499 (7th Cir. 2018); *Kawasaki Heavy Indus., Ltd. v. Bombardier Recreational Prods., Inc.*, 660 F.3d 988, 994 (7th Cir. 2011).... In fact, years before *Moses Cone* was decided, the Seventh Circuit

expressly distinguished between "'[w]aiver' in the laches or estoppel sense, rather than in the default sense or participating in judicial proceedings." *Halcon*, 446 F.2d at 161. Anticipating *Moses Cone*, the Seventh Circuit held that laches or estoppel issues were for the arbitrator, *id.* at 159 (holding that "[t]he defense of laches [is] a matter for the determination of the arbitrators"), but made clear that waiver through litigation conduct is reserved for the court, *id.* at 161 ("Section 3 [of the FAA] expressly gives the courts jurisdiction to determine the existence of a default.").

The circuits to have addressed the issue overwhelmingly agree that *Moses Cone* and *Howsam* concern only the contractual sense of waiver. *See Martin v. Yasuda*, 829 F.3d 1118, 1123 (9th Cir. 2016) ("[U]nder *Howsam*, the question [of waiver through litigation conduct or delay] is presumptively for a court and not an arbitrator to decide. Every circuit that has addressed this issue—whether a district court or an arbitrator should decide if a party waived its right to arbitrate through litigation conducted before the district court—has reached the same conclusion.") (citation omitted); *Grigsby & Assocs., Inc. v. M Sec. Inv.*, 664 F.3d 1350, 1353 (11th Cir. 2011) ("[I]t is presumptively for the courts to adjudicate disputes about whether a party, by earlier litigating in court, has waived the right to arbitrate."); *JPD, Inc. v. Chronimed Holdings, Inc.*, 539 F.3d 388, 394 (6th Cir. 2008) ("Unlike contractually-based waiver, courts have long decided whether conduct inconsistent with reliance on an arbitration agreement waives a defendant's ability to seek an arbitration referral ...."); *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 219 (3d Cir. 2007) ("Properly considered within the context of the entire opinion ... the [*Howsam*] Court was referring only to waiver, delay, or like defenses arising from non-compliance with contractual conditions precedent to arbitration ... and not to claims of waiver based on active litigation in court."); *Marie v. Allied Home Mortg. Corp.*, 402 F.3d 1, 11-13 (1st Cir. 2005) (distinguishing a "contractual time limit clause," which is

"presumed to be for the arbitrator" under *Howsam*, from waiver
"due to litigation-related activity," which courts decide).

*Lukis v. Whitepages Inc.*, 535 F. Supp. 3d 775, 786-87 (N.D. Ill. 2021) (citations
altered to omit parallel citations and to include full citations as needed).

[22] We fully agree with the district court's assessment in *Lukis*. Moreover, we would add that the U.S. Supreme Court has recently addressed the standard courts should apply when determining waiver through litigation conduct:

> When a party who has agreed to arbitrate a dispute instead brings a lawsuit, the Federal Arbitration Act (FAA) entitles the defendant to file an application to stay the litigation. *See* 9 U.S.C. § 3. But defendants do not always seek that relief right away. Sometimes, they engage in months, or even years, of litigation—filing motions to dismiss, answering complaints, and discussing settlement—before deciding they would fare better in arbitration. *When that happens, the court faces a question: Has the defendant's request to switch to arbitration come too late?*

> Most Courts of Appeals have answered that question by applying a rule of waiver specific to the arbitration context. Usually, a federal court deciding whether a litigant has waived a right does not ask if its actions caused harm. But when the right concerns arbitration, courts have held, a finding of harm is essential: A party can waive its arbitration right by litigating only when its conduct has prejudiced the other side. That special rule, the courts say, derives from the FAA's "policy favoring arbitration."

> We granted certiorari to decide whether the FAA authorizes federal courts to create such an arbitration-specific procedural rule. We hold it does not.

*Morgan v. Sundance, Inc.*, 596 U.S. 411, 413-14 (2022) (emphasis supplied). Of course, if waiver of any type is only a question for the arbitrator, as Contractor suggests, the Supreme Court would have had no need to determine that "the Eighth Circuit was wrong to condition a waiver of the right to arbitrate on a showing of prejudice" and would not have remanded so that the Eighth Circuit could apply the appropriate waiver inquiry. *Id.* at 417.

[23] We hold that, at least in the context of the FAA, courts are the proper arbiters of whether a party has waived its right to arbitrate by litigation-related conduct. Matters related to whether a party complied with time limits or other procedural conditions precedent to arbitration, however, remain presumptively reserved for the arbitrator. *See BG Grp.,* 572 U.S. at 34 ("[C]ourts presume that the parties intend arbitrators, not courts, to decide disputes about the meaning and application of particular procedural preconditions for the use of arbitration" such as "time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate.") (internal quotations omitted).

*1.2 Did Contractor's Filing of the Wisconsin Action Amount to Waiver?*

[24] Satisfied that we have the authority to decide the waiver issue at hand, we turn to Contractor's litigation conduct. Here, the trial court based its waiver determination solely on the fact that Contractor filed the Wisconsin Action without filing for mediation or arbitration with the AAA. We believe the waiver determination required a deeper analysis and consideration of the specific facts of this case.

[25] Whether a party has waived the right to arbitration depends primarily on whether that party has acted inconsistently with its right to arbitrate. *MPACT Const. Grp., LLC v. Superior Concrete Constructors, Inc.*, 802 N.E.2d 901, 910 (Ind. 2004) (citing, among other cases, *Welborn Clinic v. MedQuist, Inc.*, 301 F.3d 634, 637 (7th Cir. 2002)). "This requires an analysis of the specific facts in each case." *Id.*; *see also Cooper*, 532 F. App'x at 641 ("We must determine whether, considering the totality of the circumstances, a party acted inconsistently with the right to arbitrate.") (internal quotations omitted).

[26] In considering if waiver has occurred, courts look to a variety of factors, such as: whether the party attempting to invoke its right to arbitrate acted diligently in doing so, substantially delayed its request, filed dispositive motions, or participated in litigation or discovery; the degree of prejudice that would be suffered by the other party; and whether the litigant is unfairly manipulating the system by attempting to obtain a second bite at the apple. *See Cooper*, 532 F. App'x at 641; *Fin. Ctr. First Credit Union v. Rivera*, 178 N.E.3d 1245, 1251 (Ind. Ct. App. 2021).

[27] To be sure, "an election to proceed before a nonarbitral tribunal for the resolution of a contractual dispute is a presumptive waiver of the right to arbitrate." *Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 390 (7th Cir. 1995). But this presumption may be rebutted where the facts indicate that the invocation of the judicial process does not signify an intention to proceed in a court to the exclusion of arbitration. *Id.* at 391.

[28] Here, Contractor and Surety each urged Owner to mediate the contractual dispute, and Contractor sent a clear written demand for mediation/arbitration to Owner and Architect on February 14, 2022. These demands were rebuffed by Owner, who wanted to deal only with Surety.

[29] A mere two days after Surety denied Owner's claim on the Bonds, Contractor filed the Wisconsin Action. The complaint recounted Contractor's contractual right to demand mediation and arbitration, Contractor's demand for such, and Owner's express refusal to do so. Contractor claimed that Owner's refusal to mediate/arbitrate constituted a breach of the Construction Contract and "left [Contractor] with no recourse except for litigation to seek resolution of the claims." *Appellants' Appendix Vol. 2* at 176. And among the requests for relief listed in the complaint, Contractor expressly asked the Wisconsin court for an order compelling Owner to comply with the Construction Contract's mediation and arbitration clauses.

[30] After initiating the Wisconsin Action, Contractor did not attempt to litigate the contractual dispute; rather Contractor filed a motion to compel arbitration. Indeed, even Owner recognized that the Wisconsin Action had not proceeded along the usual litigation route, as there had been "no disclosures, discovery, schedules, or any activity other than the motion practice surrounding dismissal or stay of the case." *Appellants' Appendix Vol. 3* at 143.

[31] Owner complains that Contractor "jumped straight to litigation" instead of following "the clear dispute resolution steps in the Construction Contract."

*Appellee's Brief* at 28-29.  But this argument confuses the separate concepts of waiver through litigation conduct and failure to satisfy conditions precedent to enforcing arbitration.  The latter determination is for the arbitrator, not us.

[32]     Further, we find no merit in Owner's suggestion that the timing of Contractor's motion to compel arbitration was "particularly egregious" and represented "Contractor's new-found desire to arbitrate."  *Id*. at 29.  And this case is not on par with *Cabinetree*, in which the Seventh Circuit found waiver where the defendant "dropped a bombshell into the proceedings" and sought arbitration in the middle of the litigation, after plaintiff had provided extensive discovery to defendant, a trial date had been set six months prior, and the defendant offered no reason for its delay in requesting a stay besides needing time to weigh its options.  50 F.3d at 389.  Unlike the defendant in *Crabtree*, there was no hiding the ball.  Contractor's desire to arbitrate was clear, despite any alleged procedural stumbles.

[33]     We agree with the Wisconsin court's assessment of the situation.  Contractor filed the Wisconsin Action to enforce the arbitration clause and did not act inconsistently with its right to arbitrate.  Accordingly, the trial court erred in determining that Contractor waived its right to demand arbitration and in refusing to stay the proceedings pending arbitration.

## 2. Surety's Right to Enforce the Arbitration Clause in the Construction Contract

[34] The parties disagree about whether Surety can demand arbitration under the Construction Contract, where Surety was a non-signatory to the Construction Contract but the Bonds expressly incorporated the Construction Contract by reference.[6] They also cannot agree on whether this court has a say in the matter, with Owner asking us to decide whether there is an agreement to arbitrate between it and Surety, and Appellants arguing that this determination is for the arbitrator.

[35] We need not reach the complex arguments presented by the parties, as Surety's purported right to demand arbitration was offered by Appellants only as an alternative basis to reach arbitration. Indeed, Owner indicates in its appellate brief: "Surety is attempting to rehabilitate Contractor's waiver and backdoor Owner into arbitration when the clear language in the Bonds state otherwise." *Appellee's Brief* at 34. We, however, have found that Contractor can go through the front door.

---

[6] §1 of the Performance Bond provides: "The Contractor and Surety, jointly and severally, bind themselves … to the Owner for the performance of the Construction Contract, which is incorporated herein by reference." *Appellants' Appendix Vol. 2* at 114. § 1 of the Payment Bond similarly provides: "The Contractor and Surety, jointly and severally, bind themselves … to the Owner to pay for labor, materials and equipment furnished for use in the performance of the Construction Contract, which is incorporated by reference, subject to the following terms." *Id*. at 122.

### 3. Proper Venue for Arbitration

[36] The Construction Contract provides that arbitration "shall be conducted in Fond du Lac County, Wisconsin unless expressly prohibited by law, in which case mediation [sic] shall be held in the place where the Project is located." *Appellants' Appendix Vol. 2* at 111.

[37] Owner argues that Ind. Code § 32-28-3-17 expressly prohibits arbitration in Wisconsin and thus Indiana is the proper venue for the arbitration. This statute provides: "A provision in a contract for the improvement of real estate in Indiana is void if the provision … requires litigation, arbitration, or other dispute resolution process on the contract occur in another state."

[38] Appellants acknowledge the statute but note that where the FAA applies, as in this case, courts have consistently found such state statutes preempted by federal law. *See LaSalle Grp., Inc. v. Electromation of Delaware Cnty., Inc.*, 880 N.E.2d 330, 332 (Ind. Ct. App. 2008) (holding that I.C. § 32-28-3-17 is preempted by the FAA because it "presents an obstacle" to "congressional intent to 'foreclose state legislative attempts to undercut the enforceability of arbitration agreements'") (quoting *Southland Corp. v. Keating*, 465 U.S. 1, 16 (1984)); *see also OPE Int'l LP v. Chet Morrison Contractors, Inc.*, 258 F.3d 443, 447 (5th Cir. 2001) (similar statute found preempted by FAA "because the Louisiana statute conditions the enforceability of arbitration agreements on selection of a Louisiana forum; a requirement not applicable to contracts generally"); *Sterling Const. Corp. v. SOS Const. & Roofing, Inc.*, 2015 WL 2189588,

at *3 (N.D. Ind. May 11, 2015) ("As the Supreme Court has made clear, the [FAA] preempts any state law that is geared towards invalidating arbitration agreements.").

[39] Owner attempts to distinguish the cases finding preemption by noting that the Construction Contract here provided for a venue alternative if arbitration in Wisconsin was prohibited by law. But Owner unsuccessfully made this same argument in the Wisconsin Action and then did not appeal that court's order compelling arbitration. As a result, arbitration is currently proceeding in Wisconsin. We will leave it to the arbitrator to decide if the matter should be transferred to an arbitrator in Indiana.

[40] We reverse and remand with instructions for the trial court to stay the litigation pending arbitration.

May, J. and Foley, J., concur.