In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 18-1361

FRANCINA SMITH,

*Plaintiff-Appellee,*

*v.*

GC SERVICES LIMITED PARTNERSHIP,

*Defendant-Appellant.*

---

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 16-cv-01897 — **Richard L. Young**, *Judge.*

---

ARGUED SEPTEMBER 17, 2018 — DECIDED OCTOBER 22, 2018

---

Before EASTERBROOK, KANNE, and BRENNAN, *Circuit Judges.*

KANNE, *Circuit Judge.* Synchrony Bank hired GC Services Limited Partnership to collect a debt Francina Smith purportedly owed on her Sam's Club credit card. In response, Smith sued GC Services for alleged violation of the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. § 1601 *et seq.* Eight months later, GC Services notified Smith that she signed an

arbitration agreement with Synchrony Bank when she obtained the credit card. GC Services demanded arbitration. Smith promptly refused. Another five months passed before GC Services filed a motion to compel arbitration. The district court denied the motion after holding that GC Services could not enforce the arbitration agreement on Synchrony Bank's behalf and finding that GC Services waived any right to arbitration. Because of GC Services' gratuitous delay in seeking arbitration, we affirm the district court's decision.

## I. BACKGROUND

In 2014, Francina Smith applied for and received a Sam's Club credit card from Synchrony Bank. The credit card contract included an agreement to arbitrate all disputes arising from the account. The arbitration agreement also contained a waiver of the right to seek class action relief. In March 2016, Synchrony Bank hired GC Services to collect an allegedly unpaid balance on the credit card. GC Services informed Smith that it would commence collection proceedings unless she disputed the debt in writing.

On July 15, 2016, Smith brought a class action suit against GC Services, alleging that the company violated the FDCPA when it required her to dispute the debt in writing. She concurrently requested class certification. In August 2016, GC Services filed a motion to dismiss for failure to state a claim, lack of standing, and lack of personal jurisdiction. The motion to dismiss did not mention the arbitration agreement.

Smith subsequently sought and received leave to file an amended complaint, thus resolving the personal jurisdiction wdeficiencies. At the same time, Smith renewed her motion for class certification. GC Services filed a second motion to

dismiss. In that motion, the company again argued that Smith lacked standing to sue and that she failed to state a claim because the FDCPA requires consumers to dispute alleged debts in writing. GC Services also opposed the class certification motion. But the company did not mention the arbitration agreement in any of its briefing.

While these motions were pending, several discovery disputes arose. On February 17, 2017, Magistrate Judge Debra McVicker Lynch scheduled a discovery conference and directed the parties to file a joint report listing their discovery disputes. In that report, the parties identified five points of contention. The magistrate judge held the status conference and directed GC Services to produce the account histories for the putative class members. Several weeks later, GC Services requested a second status conference to decide an unresolved discovery dispute, but the company later withdrew its request after reaching an agreement with Smith.

On March 10, 2017, GC Services sent Smith a letter notifying her of the arbitration agreement and demanding arbitration. Three days later, Smith unequivocally refused to proceed to arbitration. This correspondence was not filed on the docket, and the district court was not notified that GC Services had demanded arbitration. GC Services filed an answer to the amended complaint on April 19, 2017. In the answer, the company denied all factual allegations and listed its affirmative defenses. Moreover, GC Services did not mention the newly discovered arbitration agreement.

Months passed, and GC Services made no attempt—on the docket or off—to compel arbitration. On June 19, 2017, the district court denied GC Services' motion to dismiss. The court found both that Smith had standing to sue and that

§ 1692g(a)(3) "plainly does not" impose a writing require-
ment. *Smith v. GC Servs. Ltd. P'ship*, No. 1:16-cv-01897-RLY-
DML, 2017 WL 2629476, at *4 (S.D. Ind. June 19, 2017) (quot-
ing *Clark v. Absolute Collection Serv., Inc.*, 741 F.3d 487, 490 (4th
Cir. 2014)). Approximately one month later, the district court
granted Smith's motion to certify the class.

On August 7, 2017, thirteen months after the suit began,
GC Services moved to compel arbitration. The district court
denied the motion on two independent grounds. First, the
court held that, as a nonsignatory, GC Services could not en-
force the arbitration agreement. Second, the court found that
GC Services had waived any right to arbitrate by not dili-
gently asserting that right. This appeal followed.

## II. ANALYSIS

GC Services frames this appeal as one involving the
"novel issue" of whether GC Services can bind Smith to the
arbitration agreement as a nonsignatory. (Appellant's Br. at
1.) But that question of state law need be reached only if the
district court erred in finding that the company waived any
right to arbitrate.

Before we reach the merits, we must address an initial
question of terminology. In the criminal context, we distin-
guish between "forfeiture" and "waiver." See *United States v.
Woods*, 301 F.3d 556, 560 (7th Cir. 2002) (explaining that
waiver of an argument precludes review, while mere forfei-
ture of an argument permits plain error review). Forfeiture "is
the failure to make the timely assertion of a right," while
"waiver is the 'intentional relinquishment or abandonment of
a known right.'" *United States v. Olano*, 507 U.S. 725, 733 (1993)
(quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). Our prior

cases discussing the loss of a right to arbitrate uniformly consider whether "waiver" occurred. But the concept encompasses both intentional relinquishments and implicit abandonments of the right. See, e.g., *Kawasaki Heavy Indus., Ltd. v. Bombardier Recreational Prod., Inc.*, 660 F.3d 988, 994 (7th Cir. 2011) (explaining that waiver can occur explicitly or be inferred from inconsistent actions). For consistency's sake, we will consider whether GC Services "waived" any right to arbitration. But that analysis necessarily includes the concept of forfeiture as defined above.

Like any other contractual right, the right to arbitrate can be waived. *St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Prod. Co.*, 969 F.2d 585, 590 (7th Cir. 1992). In this case, the arbitration agreement also included a waiver of the right to bring a class action suit. If GC Services waived any right to arbitrate, the company necessarily waived any right to oppose class certification premised on the agreement. See *A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1065 n.17 (7th Cir. 2018). "The factual determinations that a district court predicates a finding of waiver upon are reviewed for clear error, while the legal question of whether the conduct amounts to waiver is reviewed *de novo*." *Ernst & Young LLP v. Baker O'Neal Holdings, Inc.*, 304 F.3d 753, 756 (7th Cir. 2002) (citing *Iowa Grain Co. v. Brown*, 171 F.3d 504, 509 (7th Cir. 1999)). If the district court applied "the applicable law" in weighing the evidence, the result turns on "whether the district court clearly erred in its assessment" that waiver occurred. *Iowa Grain Co.*, 171 F.3d at 509.

Smith does not contend that GC Services expressly waived any right to arbitrate. The question is whether we should infer that forfeiture occurred, which requires us to "determine that,

considering the totality of the circumstances, a party acted inconsistently with the right to arbitrate." *Kawasaki*, 660 F.3d at 994. Many factors are relevant to this analysis, but diligence or the lack thereof is particularly important. *Id.* Did "the party seeking arbitration … do all it could reasonably have been expected to do to make the earliest feasible determination of whether to proceed judicially or by arbitration?" *Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 391 (7th Cir. 1995). We also consider "whether the allegedly defaulting party participated in litigation, substantially delayed its request for arbitration, or participated in discovery." *Kawasaki*, 660 F.3d at 994. We need not find that the nonmoving party was prejudiced by the delay in seeking arbitration. See *St. Mary's*, 969 F.2d at 590 ("[W]here it is clear that a party has forgone its right to arbitrate, a court may find waiver even if that decision did not prejudice the non-defaulting party."). "[A]n election to proceed before a nonarbitral tribunal for the resolution of a contractual dispute is a presumptive waiver of the right to arbitrate." *Cabinetree*, 50 F.3d at 390.

### A. GC Services Acted Inconsistently with the Right to Arbitrate

The district court found that GC Services did not act diligently because the company did not mention the arbitration agreement in its answer, provided an inadequate explanation for the five-month delay in seeking arbitration after learning of the agreement, and prejudiced Smith by (unsuccessfully) engaging in motions practice.

GC Services did not privately demand that Smith arbitrate her claim until eight months after she filed suit. After Smith's prompt refusal, the company waited another five months be-

fore moving to compel. GC Services' explanation for these de-
lays is entirely inadequate. The company contends that the in-
itial eight-month delay occurred because the arbitration
agreement was in Synchrony Bank's possession and so "GC
Services was unaware of [its] existence." (Appellant's Reply
Br. at 8.) The initial suggestion that GC Services—a sophisti-
cated debt collection agency—would be unaware that credit
card agreements routinely include arbitration agreements is
suspect. Such provisions are commonplace, and GC Services
should have investigated whether Smith's contract contained
one. What's more, federal regulations require credit card is-
suers to post their credit card agreements online. See 12 C.F.R.
§ 1026.58(d). Even if Synchrony Bank was nonresponsive to
inquiries, GC Services could have found the agreement
through a routine internet search.

But set aside the initial eight-month dalliance. Even as-
suming that GC Services could not have reasonably discov-
ered the existence of the arbitration agreement until March
2017, the company's actions from that point were unjustified
and manifestly inconsistent with an intention to arbitrate.
Several weeks later, GC Services filed its answer, but made no
mention of the arbitration agreement. The company's motion
to dismiss and Smith's motion for class certification were
pending, but GC Services made no effort to supplement its
briefing.

When finally submitted, that motion was accompanied by
two declarations and a copy of the credit card agreement.
Each declaration was less than four pages. One declaration
was given by a GC Services employee. The credit card agree-
ment was, as already stated, available online. GC Services has
not provided any information regarding its efforts to obtain

this minimal documentation from Synchrony Bank. Did GC Services request it once or many times? When was the information first requested? We can only guess.

Setting aside the inexplicable delay in obtaining a three-page declaration, GC Services has not explained why it never notified the district court that it intended to move to compel arbitration. At the time the company demanded that Smith consent to arbitration, a motion to dismiss and motion for class certification were pending. Arbitration would have mooted both motions before the district court. But GC Services never requested that consideration of the motions be stayed or even mentioned the arbitration agreement in its briefing.

GC Services also argues that Smith—not the company—is the "primary, and in many respects, sole cause of any delay." Appellant's Reply Br. at 9. This perplexing argument has no merit. The arbitration agreement here was elective. Accordingly, GC Services had the obligation to discover and assert any right to arbitration. See *Kawasaki*, 660 F.3d at 997 n.6 (explaining that a party to an elective arbitration clause may proceed in court unless the opposing party has affirmatively invoked the clause). On these facts, the district court's conclusion that GC Services waived its right to arbitration was not erroneous.

### B.  Smith Would be Prejudiced by Arbitration

The company attempts to buttress its inadequate explanations for the delay by asserting that the district court erred in finding that Smith would be prejudiced by proceeding to arbitration.

As an initial matter, GC Services incorrectly argues that waiver can occur only if there was prejudice. GC Services relies upon cases from the First and Fifth Circuits for that proposition. See *MicroStrategy, Inc. v. Lauricia*, 268 F.3d 244, 249 (4th Cir. 2001); *Creative Sols. Grp., Inc. v. Pentzer Corp.*, 252 F.3d 28, 32 (1st Cir. 2001). But we have repeatedly held that prejudice is not necessary to a finding of waiver. See *Kawasaki*, 660 F.3d at 994; *St. Mary's*, 969 F.2d at 590.

Nevertheless, prejudice is a relevant factor. See *St. Mary's*, 969 F.2d at 590 ("If prejudice is relevant, even if not dispositive, the district court should consider it just as it should consider any other relevant factor."). GC Services argues that the district court erred—as a matter of law—when it partially relied upon the company's filing of a motion to dismiss in concluding that prejudice existed. "A party does not waive its right to arbitrate a dispute by filing a motion to dismiss or a motion to transfer venue." *Faulkenberg v. CB Tax Franchise Sys.*, LP, 637 F.3d 801, 807 (7th Cir. 2011) (quoting *Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 562 (7th Cir. 2008)). However, we have never held that the filing of a motion to dismiss is *irrelevant* to the waiver analysis.

When a motion to dismiss raises jurisdictional or procedural arguments for dismissal, the party has not "submit[ed] the case to the court for a decision that resolves the dispute." *Kawasaki*, 660 F.3d at 995; accord *Sharif v. Wellness Int'l Network, Ltd.*, 376 F.3d 720, 727 (7th Cir. 2004). On the other hand, a motion seeking a determination that the plaintiff's legal theory does not state a claim is evidence of waiver because success by the defendant ends "the case just as surely as a judgment entered after a trial." *St. Mary's*, 969 F.2d at 589.

In this case, GC Services' motion to dismiss framed an integral—perhaps dispositive—issue: whether 15 U.S.C. § 1692g(a)(3) requires that debts be disputed in writing. The Third Circuit has held that a written dispute is required; the Second, Fourth, and Ninth Circuits have held that no writing requirement exists. Compare *Graziano v. Harrison*, 950 F.2d 107, 112 (3d Cir. 1991), with *Clark*, 741 F.3d at 490–91; *Hooks v. Forman, Holt, Eliades & Ravin, LLC*, 717 F.3d 282, 285–87 (2d Cir. 2013); *Camacho v. Bridgeport Fin., Inc.*, 430 F.3d 1078, 1080–82 (9th Cir. 2005). District courts within the Seventh Circuit have decided the issue both ways. See, e.g., *Jolly v. Shapiro*, 237 F. Supp. 2d 888, 895 (N.D. Ill. 2002) (finding a writing requirement); *Campbell v. Hall*, 624 F. Supp. 2d 991, 1000 (N.D. Ind. 2009) (finding no writing requirement).

If the district court had rejected Smith's fundamental legal theory, GC Services would have both prevailed on the merits and strengthened the intra-circuit precedent supporting an interpretation of § 1692g(a)(3) favorable to debt collectors. GC Services' decision to submit that question to the district court was "not consistent with a desire to arbitrate." *St. Mary's*, 969 F.2d at 589. And an attempt to compel arbitration after losing on a central legal issue is suspect because "[a] party may not normally submit a claim for resolution in one forum and then, when it is disappointed with the result in that forum, seek another forum." *Id.*

Thus, the district court's determination that Smith was prejudiced when GC Services sought arbitration *after* Smith had defeated a motion to dismiss, obtained class certification, and litigated several discovery issues was not erroneous. In essence, GC Services sought to erase Smith's successes—including her victory on the pivotal legal issue of whether

§ 1692g(a)(3) contains a writing requirement. This attempt to "play heads I win, tails you lose" is "the worst possible reason for delay." *Cabinetree*, 50 F.3d at 391. GC Services' argument that Smith would suffer no prejudice from proceeding to arbitration is not only wrong but beside the point.

### III. CONCLUSION

GC Services did not discover the existence of the arbitration agreement for eight months, and then the company did not notify the court or move to compel arbitration for another five months. None of the explanations offered for the delays are adequate. And GC Services' decision to litigate the merits of Smith's legal theory and request for class certification was inconsistent with a desire to arbitrate. Because we affirm the district court's conclusion that GC Services waived any right to arbitrate, we need not explore whether GC Services could have enforced the arbitration agreement as a nonsignatory.

For these reasons, we **AFFIRM** the district court's denial of GC Services' motion to compel arbitration.