COURT OF APPEALS
DECISION
DATED AND FILED

April 20, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP48**

STATE OF WISCONSIN

Cir. Ct. No. 2021CV548

IN COURT OF APPEALS
DISTRICT IV

---

CHRISS JOHNSON,

    PLAINTIFF-APPELLANT,

PLAZA SERVICES, LLC,

    PLAINTIFF-RESPONDENT,

  V.

JORA CREDIT OF WISCONSIN, LLC,

    DEFENDANT-RESPONDENT.

---

      APPEAL from an order of the circuit court for Dane County: RHONDA L. LANFORD, Judge. *Affirmed*.

      Before Blanchard, P.J., Fitzpatrick, and Nashold, JJ.

      **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. Chriss Johnson appeals an order of the Dane County Circuit Court compelling arbitration of his claims against Plaza Services, LLC ("Plaza") and Jora Credit of Wisconsin, LLC ("Jora"). Johnson argues that the circuit court erred in compelling arbitration for two reasons: (1) Plaza and Jora waived their right to arbitrate Johnson's claims; and (2) the parties' arbitration agreement does not cover part of Johnson's claim against Plaza. For the following reasons, we affirm.

## BACKGROUND

¶2     There is no dispute as to the following material facts.

¶3     Johnson entered into a Consumer Installment Loan Agreement ("the Agreement") to repay $2,600 he borrowed from Jora. As we will discuss later in this opinion, the Agreement contains a provision that requires nearly all disputes between Johnson and Jora to be resolved through arbitration (the "arbitration provision"). However, the arbitration provision permits the parties to resolve their disputes in small claims court if the small claims court has the authority to determine those disputes.

¶4     Jora assigned to Plaza its rights under the Agreement. When Johnson failed to make the payments required pursuant to the Agreement, Plaza filed a small claims action against Johnson. Nearly six months after Plaza initiated the small claims action, Johnson asserted a counterclaim alleging that Plaza violated the Wisconsin Consumer Act pursuant to WIS. STAT. §§ 425.107 and

427.104 (2021-22).[1]  Because Johnson's counterclaim exceeded the monetary jurisdiction of the small claims court, Plaza's complaint and Johnson's counterclaim were transferred to circuit court and converted to a civil action.  *See* WIS. STAT. § 799.02(1) (if a party files a counterclaim in a small claims action that exceeds the jurisdiction of the small claims court, the entire matter shall be tried as a civil action under WIS. STAT. chs. 801 to 847).

¶5     On the same day that he filed his counterclaim against Plaza, Johnson filed a civil action against Jora in circuit court alleging the same causes of action as his counterclaim against Plaza.  Jora was served with the complaint in this civil action more than two months after it was filed, and Jora timely filed an answer to the complaint.  In Jora's answer, Jora asserted an affirmative defense that "[Johnson's] claim may be subject to arbitration."

¶6     On the same day that Jora filed its answer, Plaza and Jora filed a joint motion to consolidate Johnson's lawsuit against Jora with the lawsuit between Plaza and Johnson.  The motion to consolidate indicated that Plaza and Johnson had conducted some "preliminary discovery," but that Plaza and Jora sought to reserve their right to arbitrate Johnson's claims if the cases were consolidated.  Two months after the motion to consolidate was filed, the circuit court granted the motion and consolidated the cases.

¶7     One day after the court granted the consolidation motion, Plaza and Jora filed a joint motion to compel arbitration.  The circuit court granted the

---

[1] As will be discussed, Johnson also filed a lawsuit against Plaza in federal court alleging a violation of the Fair Debt Collection Practices Act.  All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

motion, over Johnson's objection, and ordered that the matter be submitted to an arbitrator.[2] Johnson appeals the court's order.

¶8     Additional material facts are mentioned in the following discussion.

## DISCUSSION

¶9     Johnson argues that the circuit court erred in granting the motion to compel arbitration filed by Plaza and Jora (collectively, "the respondents"). First, Johnson argues that Plaza and Jora each waived the right to arbitrate Johnson's claims. Second, Johnson argues that the Agreement's arbitration provision does not apply to his requests for injunctive or equitable relief against Plaza. We begin by setting forth the governing principles and our standard of review regarding arbitration agreements.

### I.  Governing Principles and Standard of Review Regarding Arbitration Agreements.

¶10     This appeal requires us to interpret the arbitration provision in the Agreement. The interpretation of the arbitration provision involves contract interpretation, which is a question of law that we review de novo. *First Weber Grp., Inc. v. Synergy Real Est. Grp., LLC*, 2015 WI 34, ¶20, 361 Wis. 2d 496, 860 N.W.2d 498.

---

[2] Plaza and Jora also moved to dismiss the consolidated action. However, the circuit court held that it would not dismiss the action because Johnson had applied to stay the action until arbitration was conducted. *See* WIS. STAT. § 788.02; 9 U.S.C. § 3. As a result, the court stayed Johnson's claims and denied the motion to dismiss. The parties do not dispute on appeal this portion of the circuit court's order.

4

¶11 The arbitration provision in the Agreement states that arbitration is governed by the Federal Arbitration Act ("FAA"), and the parties do not dispute that the FAA and germane federal case law apply to this dispute. The FAA provides that arbitration agreements "shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. This language reflects the "fundamental principle that arbitration is a matter of contract." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010). The FAA "places arbitration agreements on an equal footing with other contracts and requires courts to enforce them according to their terms." *Id.* (citations omitted). If an issue in a lawsuit is covered by an arbitration provision, a court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3.

## II. Plaza and Jora Did Not Waive Their Right to Arbitrate.

¶12 Johnson argues that Plaza and Jora waived their right to arbitrate Johnson's claims. We begin by setting forth the governing principles and our standard of review regarding waiver of the right to arbitrate.

### A. Governing Principles and Standard of Review Regarding Waiver of the Right to Arbitrate.

¶13 "Like any other contractual right, the right to arbitrate can be waived."[3] *Smith v. GC Servs. Ltd. P'ship*, 907 F.3d 495, 499 (7th Cir. 2018).

---

[3] Applicable federal case law recognizes that "waiver" is the "intentional relinquishment or abandonment of a known right," whereas "forfeiture" is the "failure to make the timely assertion of a right." *Smith v. GC Servs. Ltd. P'ship*, 907 F.3d 495, 499 (7th Cir. 2018). In the context of the loss of a right to arbitrate, the term "waiver" refers to both intentional relinquishment and implicit abandonment of the right. *Id.* Thus, while we discuss whether Plaza and Jora "waived" their right to compel arbitration, that discussion necessarily includes the concept of forfeiture. *See id.*

5

Waiver can be either explicit or inferred from a party's actions. ***Brickstructures, Inc. v. Coaster Dynamix, Inc.***, 952 F.3d 887, 891 (7th Cir. 2020). Here, the parties agree that Plaza and Jora did not explicitly waive their right to arbitrate, so we must determine whether waiver can be inferred from their actions.

¶14     "For waiver of the right to arbitrate to be inferred, we must determine that, considering the totality of the circumstances, a party acted inconsistently with the right to arbitrate." ***Kawasaki Heavy Indus., Ltd. v. Bombardier Recreational Prods., Inc.***, 660 F.3d 988, 994 (7th Cir. 2011). Courts may consider several factors in determining whether waiver may be inferred, but "diligence or the lack thereof should weigh heavily in the decision." ***Id.*** In determining whether a party was diligent, a court considers whether the party did "all it could reasonably have been expected to do to make the earliest feasible determination of whether to proceed judicially or by arbitration." ***Smith***, 907 F.3d at 499. Other non-dispositive factors that we consider include whether the allegedly waiving party "participated in litigation, substantially delayed its request for arbitration, or participated in discovery." ***Kawasaki***, 660 F.3d at 994. Other parties need not show that they were prejudiced by the purported waiver. ***Morgan v. Sundance, Inc.***, 142 S. Ct. 1708, 1711 (2022).

¶15     When the allegedly waiving party has participated in litigation, the "key determination" is whether the party "manifested an intent to proceed with litigation." ***Kawasaki***, 660 F.3d at 995. "This policy prevents parties from waiting to see how they fare in a judicial forum before choosing arbitration [and] prevents the duplicative adjudication of disputes." ***Id.*** at 994-95. "[W]hen a party chooses to proceed in a judicial forum, there is a rebuttable presumption that the party has waived its right to arbitrate." ***Id.*** at 995.

6

¶16    Whether a party has waived its right to compel arbitration has "both a factual and a legal dimension." ***Brickstructures***, 952 F.3d at 891. "We review *de novo* the [circuit] court's determinations regarding the legal principles, like the applicable common law rules and presumptions, but defer to the [circuit] court's findings with respect to the facts and the legal consequences of those facts." ***Id.*** Here, the parties do not dispute any material facts, so our review of the circuit court's decision is de novo.

¶17    We first consider whether Plaza waived its right to arbitrate.

**B.  Plaza Did Not Waive Its Right to Arbitrate.**

¶18    Johnson argues that Plaza waived its right to arbitrate by litigating in small claims court and continuing to litigate after Johnson filed his counterclaim. Plaza argues that its conduct in the small claims action did not waive its right to arbitrate. Instead, Plaza contends that the proper focus of the analysis in this case is Plaza's conduct after Johnson filed his counterclaim, and that this conduct was consistent with Plaza's right to arbitrate. For the following reasons, we conclude that Plaza did not waive its right to arbitrate Johnson's counterclaim.

1.  Plaza Did Not Waive Its Right to Arbitrate by Litigating in Small
Claims Court Against Johnson.

¶19    The arbitration provision states in pertinent part: "In this [provision], the word 'Disputes' has the broadest possible meaning. This [provision] governs all 'Disputes' involving the parties to this Agreement and/or our servicers and agents." The arbitration provision requires all disputes to be resolved in arbitration except for disputes that may be resolved in small claims court:

> Each party has the right to arbitrate, or to go to small-claims court if the small-claims court has the power to hear the Dispute. Arbitration will resolve all Disputes that the small-claims court does not have the power to hear. If … a Dispute changes so that the small-claims court loses the power to hear it, then the Dispute will be heard only by an Arbiter.

This language establishes that a party may choose to resolve a dispute in small claims court if the small claims court has authority to hear that dispute, but the dispute must be arbitrated if the small claims court loses authority over that dispute. With that provision in mind, we discuss Johnson's arguments.

¶20 First, Johnson argues that Plaza waived its right to arbitrate his counterclaim because Plaza initially chose to resolve the dispute over non-payment by Johnson in small claims court instead of through arbitration. This argument fails because Plaza's decisions to litigate in small claims court and to request arbitration after Johnson's counterclaim was filed were consistent with Plaza's rights under the arbitration provision. In filing the small claims action against Johnson, Plaza exercised its contractual right to resolve its dispute in small claims court instead of arbitration. Johnson's counterclaim asserted new causes of action against Plaza that exceeded the authority of the small claims court to resolve the counterclaim, and the arbitration provision requires arbitration of a dispute that the small claims court "loses the power to hear." As a result, Plaza's motion to compel arbitration of Johnson's counterclaim was consistent with its contractual rights under the arbitration provision. Therefore, Plaza's initial choice to resolve its dispute against Johnson in small claims court does not establish that Plaza waived its contractual right to arbitrate Johnson's separate counterclaim.

¶21 Second, Johnson argues that Plaza waived its right to arbitrate because, according to Johnson, Plaza "provided no reason for its initial

determination to file in court as opposed to arbitrating." However, as just explained, the arbitration provision allowed Plaza to litigate its dispute regarding Johnson's non-payment in small claims court. Johnson does not point to any language in the arbitration provision that required Plaza to explain to Johnson why it was not commencing arbitration initially and, instead, filing a small claims action. Thus, the fact that Plaza did not explain to Johnson its choice to proceed in small claims court instead of arbitration does not lead to the conclusion that Plaza waived its right to arbitrate the issues raised in Johnson's counterclaim.

¶22 Third, Johnson argues that Plaza waived its right to arbitrate because it participated in discovery in the small claims proceedings without asserting its right to arbitrate. As just explained, Plaza's choice to resolve its dispute against Johnson in small claims court did not waive its right to arbitrate Johnson's counterclaim. Accordingly, Plaza's participation in discovery as part of its small claims action does not demonstrate that Plaza waived its right to arbitrate Johnson's counterclaim.

¶23 Fourth, Johnson argues that Plaza waived its right to arbitrate because Johnson informed Plaza of his intent to file an action outside of small claims court, and Plaza did not mention arbitration in its responses to Johnson's communications. Specifically, Johnson relies on the following: a settlement offer he sent in writing to Plaza demanding more than $10,000 from Plaza; and emails to Plaza in which Johnson stated that he intended to file a separate action against Jora. Even if we assume for the moment that these communications plausibly suggested that Johnson intended to file a counterclaim against Plaza, Plaza could not reasonably be expected to assert its right to arbitrate in informal communications with Johnson for several reasons, including that Plaza could not definitively know the scope of Johnson's claims until Johnson formally

9

commenced the counterclaim. *See Smith*, 907 F.3d at 499 (in determining whether a party was diligent, we ask whether the party did "all it could *reasonably* have been expected to do to make the earliest feasible determination of whether to proceed judicially or by arbitration" (emphasis added)). Further, Johnson does not plausibly explain why its stated intention to sue Jora required Plaza to assert its right to arbitrate, and we can discern no such reason.

¶24    Therefore, we conclude that Plaza's conduct with respect to its small claims action—including pursuing discovery and communicating with Johnson—does not establish that Plaza waived its right to arbitrate the issues raised in Johnson's counterclaim.

### 2.  Plaza Did Not Waive Its Right to Arbitrate After Johnson Filed His Counterclaim.

¶25    For the reasons we now discuss, Plaza's conduct after Johnson filed his counterclaim does not establish that Plaza waived its right to arbitrate.  As already noted, in a joint motion with Jora, Plaza moved to consolidate Johnson's state court cases with Plaza and Jora.  In that motion, Plaza explained that consolidation would be beneficial because it would save time and resources if Plaza demanded arbitration.  One day after the circuit court granted the motion to consolidate, Plaza moved to compel arbitration.  This conduct by Plaza reasonably demonstrates that Plaza delayed its demand for arbitration not because it intended to resolve the dispute through litigation but, instead, because it wanted to consolidate claims against and by Johnson before proceeding with arbitration. This conduct is consistent with Plaza's right to arbitrate and strongly indicates that Plaza did not waive that right.  Johnson makes several arguments to the contrary, and we reject each.

¶26     First, Johnson argues that Plaza waived its right to arbitrate because Plaza did not immediately move to compel arbitration but, instead, conducted discovery by deposing Johnson and requesting Johnson's phone records. We are not persuaded that this limited discovery contributed to a waiver. "[P]articipat[ion] in discovery" is one factor we consider in the waiver analysis. *Kawasaki*, 660 F.3d at 994. However, Plaza's limited discovery was not inconsistent with its right to arbitrate Johnson's separate counterclaim such that a waiver occurred. As an example, at the start of Johnson's deposition, Plaza's counsel stated: "Obviously Plaza hasn't filed an answer or responsive pleading yet [to Johnson's counterclaim], but I just want to make sure that it's clear for the record that we don't intend to waive [the right to arbitrate] just by doing this deposition today." Additionally, Plaza asserts—and Johnson does not dispute—that Plaza's limited discovery would be available and be useful to the parties in arbitration. Thus, Plaza's limited discovery after Johnson's counterclaim was filed did not waive Plaza's right to arbitrate.

¶27     Second, Johnson argues that Plaza was not diligent in its demand for arbitration because in an email Plaza stated that it wanted Johnson to voluntarily dismiss his counterclaim before Plaza proceeded with its options, including serving a motion for sanctions and compelling arbitration. In a separate email to Johnson, Plaza stated that it would move to compel arbitration if Johnson did not voluntarily dismiss his counterclaim. Contrary to Johnson's argument, these emails do not demonstrate Plaza's intent to litigate Johnson's counterclaim. Rather, these emails indicate that Plaza wanted to avoid dispute resolution forums—including both litigation and arbitration—but would demand arbitration if Johnson did not voluntarily dismiss his counterclaim. These attempts by Plaza to informally resolve the counterclaim do not establish that Plaza waived its right

to arbitrate. *See Dickinson v. Heinold Sec., Inc.*, 661 F.2d 638, 641 (7th Cir. 1981) (holding that defendant's eighteen-month settlement negotiations were consistent with its right to arbitrate); *Bahoor v. Varonis Sys., Inc.*, 152 F. Supp. 3d 1091, 1102 (N.D. Ill. 2015) ("Settlement negotiations generally do not indicate waiver, whether they take place before or after a complaint is filed.").

¶28 Third, Johnson argues that Plaza waived its right to arbitrate because of its conduct in Johnson's federal court lawsuit.[4] Johnson points to an email from Plaza stating that Plaza and Jora would move to compel arbitration if Johnson did not voluntarily dismiss the federal court lawsuit. As just explained, however, a party's attempt to settle a lawsuit ordinarily does not demonstrate that the party waived its right to arbitrate. *See Dickinson*, 661 F.2d at 641; *Bahoor*, 152 F. Supp. 3d at 1102. Johnson also points to a statement in a joint pretrial report filed in the federal court lawsuit in which both Johnson and Plaza requested a jury trial. Even if we would assume that Plaza's conduct in Johnson's federal court lawsuit may make a difference to our analysis regarding the state court lawsuit—and we do not make that assumption—this statement only requests a jury trial in the federal court litigation. Nothing in the federal joint pretrial report indicates that Plaza intended to waive its right to arbitrate the distinct causes of action that were pending in the state court. Thus, we conclude that Plaza's conduct in Johnson's federal court lawsuit is not sufficient to infer that Plaza waived its right to arbitrate the state court lawsuit. *See Dickinson*, 661 F.2d at 641 ("[W]aiver of arbitration is not lightly to be inferred.").

---

[4] Johnson's federal court lawsuit alleged that Plaza violated the federal Fair Debt Collection Practices Act, whereas Johnson's state court lawsuit alleged that Plaza violated the Wisconsin Consumer Act under WIS. STAT. §§ 425.107 and 427.104.

¶29   In sum, Plaza did not waive its right to arbitration in these circumstances.

## C. Jora Did Not Waive Its Right to Arbitrate.

¶30   As explained earlier, Johnson filed a complaint in the circuit court against Jora on the same day that he filed his counterclaim against Plaza. This complaint was not served on Jora until over two months after it was filed. Once Jora was served, Jora timely filed an answer that asserted as an affirmative defense that Johnson's claim "may be subject to arbitration." On the same day that it filed its answer, Jora moved to consolidate Johnson's action against it with the separate state court action between Plaza and Johnson. Jora explained in this motion that consolidation would save time and resources if Johnson's claims were arbitrated. The circuit court granted the motion to consolidate, and Jora moved to compel arbitration one day later. Jora's conduct reasonably demonstrates that Jora delayed its demand for arbitration not because it intended to resolve the dispute with Johnson in litigation but, instead, because it wanted to consolidate Johnson's state court claims before proceeding with arbitration. This conduct is consistent with Jora's right to arbitrate and indicates that Jora did not waive its right to arbitrate. Johnson makes several arguments to the contrary, and we reject each.

¶31   First, Johnson argues that Jora waived its right to arbitrate because Jora did not mention arbitration in its communications with Johnson while Plaza's small claims action against Johnson was pending. More specifically, Johnson points to a series of emails in which Johnson's counsel indicated that he might add Jora as a party to the small claims action, and Jora's counsel responded without mentioning arbitration as a defense. Johnson asserts that these communications lead to the inference that Jora waived its right to arbitrate. Johnson's argument

13

fails because these emails are not inconsistent with Jora's right to arbitrate Johnson's claims against Jora. Johnson cites no authority which requires a party to assert its right to arbitrate in pre-litigation communications. Also of significance is that those emails were exchanged before Johnson filed his complaint against Jora, so Jora could not know with certainty that Johnson would in fact sue it, or the scope of Johnson's potential claims, until Johnson actually filed his complaint. As a result, Jora could not be reasonably expected to assert its right to arbitrate until Johnson filed his complaint. *See **Smith***, 907 F.3d at 499 (in determining whether a party was diligent, we ask whether the party did "all it could *reasonably* have been expected to do to make the earliest feasible determination of whether to proceed judicially or by arbitration" (emphasis added)).

¶32    Second, Johnson argues that Jora waived its right to arbitrate because it effectively participated in litigation of Johnson's counterclaim. According to Johnson, Plaza's discovery requests and attempts to have Johnson dismiss his counterclaim should be imputed to Jora because Jora had the same counsel as Plaza and benefitted from discovery that Plaza conducted. This argument also fails. Johnson does not cite to any legal authority in his initial brief filed in this court to support his assertion that actions by one party may be imputed

to another for the purposes of determining whether arbitration has been waived.[5] We will not consider arguments that are not supported by references to legal authority. *State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992). In addition, even if we would consider Plaza's actions, Johnson has not demonstrated that those actions demonstrate a waiver. As explained above, Plaza's discovery requests and attempts to have Johnson voluntarily dismiss his counterclaim are consistent with Plaza's right to arbitrate. Therefore, we conclude that Jora's association with Plaza does not establish that Jora waived its right to arbitrate.

¶33    In sum, we conclude that Jora did not waive its right to arbitrate Johnson's claims.

### III.  Johnson's Claims Are Covered by the Arbitration Provision.

¶34    Johnson next argues that his WIS. STAT. § 425.107 claim against Plaza is not arbitrable because the arbitration provision does not cover claims

---

[5] In his reply brief filed in this court, Johnson argues that Plaza's actions should be imputed to Jora according to the "principles of agency or corporate law" and cites *Al Rushaid v. National Oilwell Varco, Inc.*, 757 F.3d 416, 422 (5th Cir. 2014) ("[T]he actions of an arbitration proponent's affiliates may be imputed to the proponent for the purposes of determining waiver when principles of agency or corporate law, such as the alter ego doctrine, would counsel such imputation."). We decline to consider this basis for imputation of waiver because Johnson did not raise any arguments regarding the principles of agency or corporate law in his initial brief on appeal. *See A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 492, 588 N.W.2d 285 (Ct. App. 1998) ("It is inherently unfair for an appellant to withhold an argument from its main brief and argue it in its reply brief because such conduct would prevent any response from the opposing party.").

seeking "injunctive or equitable relief."[6] For the following reasons, we conclude that the arbitration provision covers Johnson's § 425.107 claim against Plaza.[7]

¶35    The arbitration provision is structured in a question and answer format. In response to the question "Which Disputes are covered?" the arbitration provision explains that the parties agree to arbitrate all disputes, with uses of "you" or "your" referring to the borrower, here Johnson:

> In this [provision], the word "Disputes" has the broadest possible meaning. This [provision] governs all "Disputes" involving the parties to this Agreement and/or our servicers and agents …. This includes all claims even indirectly related to your application and agreements with us. This includes claims related to information you previously gave us. It includes all past agreements. It includes extensions, renewals, refinancings, or payment plans. It includes claims related to collections, privacy, and customer information. [I]t includes claims related to setting aside this [provision]. [I]t includes claims about the [provision's] validity and scope. [I]t includes claims about whether to arbitrate.

---

[6] We assume without deciding that Johnson seeks "injunctive or equitable relief" through his WIS. STAT. § 425.107 claim against Plaza. Johnson apparently concedes that his § 425.107 claim against Jora was rendered invalid as a result of the holdings in ***Duncan v. Asset Recovery Specialists, Inc.***, 2022 WI 1, 400 Wis. 2d 1, 968 N.W.2d 661. Additionally, Johnson does not develop any argument that his other claims against Plaza and Jora pursuant to WIS. STAT. § 427.104 are exempt from the arbitration provision.

[7] We note that the arbitration provision requires arbitration of "claims about whether to arbitrate." The respondents argue—and Johnson does not dispute—that Johnson's argument regarding the arbitrability of his WIS. STAT. § 425.107 claim against Plaza is a claim "about whether to arbitrate." The FAA permits parties to agree by contract that an arbitrator will resolve a threshold issue of arbitrability. ***Rent-A-Ctr., W., Inc. v. Jackson***, 561 U.S. 63, 68-69 (2010) ("We have recognized that parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy."). Nonetheless, the circuit court decided this argument regarding the arbitrability of Johnson's § 425.107 claim, and the parties do not object to this court deciding this threshold issue of arbitrability.

¶36     In a separate section, the arbitration provision poses the question "Do other options exist?" and provides the following answer: "Yes. Both parties may seek remedies which don't claim money damages. This includes pre-judgment seizure, injunctions, or equitable relief." For ease of reference, we refer to this particular question and answer as the "remedies" section.

¶37     Johnson argues that the remedies section means that claims seeking injunctions and equitable relief are exempt from arbitration. According to Johnson, the "other options" to which this section refers are dispute resolution methods other than arbitration. In response, the respondents argue that this section does not exempt claims from arbitration but, instead, sets forth the remedies available to the parties. According to the respondents, the "other options" available are remedies that a party may seek other than "money damages."

¶38     When read in isolation, it is not clear whether the remedies section addresses permissible methods of dispute resolution or permissible remedies that a party may seek in arbitration. However, when read in the context of the entire arbitration provision, the only reasonable interpretation of the remedies section is that the parties are permitted to seek remedies other than money damages for their claims—including injunctions and equitable relief—not that the parties may seek dispute resolution methods other than arbitration for their claims. We now describe other portions of the arbitration provision that support this interpretation.

¶39     For example, in a section titled "Other Options," the arbitration provision explicitly provides three methods by which the parties can resolve disputes without arbitration:

> You can contract for our services and decide not to arbitrate. Consider these choices: 1. Informal Dispute Resolution. Contact us and attempt to settle any Disputes.

17

2. Small-claims Court. Seek to resolve Disputes in small-claims court, within state law limits. 3. Opt-Out of Arbitration. Sign the Agreement and then timely opt-out of Arbitration.[8]

(Emphasis omitted.) The language of this section establishes three exceptions to the arbitration requirement that a party may pursue in resolving disputes. However, nothing in this section indicates that claims seeking injunctions or equitable relief are exempt from the broad coverage of the arbitration provision.

¶40 Further, other portions of the arbitration provision confirm that only small claims disputes are exempt from the arbitration requirement. For instance, as discussed earlier, the arbitration provision states: "Each party has the right to arbitrate, or to go to small-claims court if the small-claims court has the power to hear the Dispute. Arbitration will resolve all Disputes that the small-claims court does not have the power to hear." Additionally, the arbitration provision states that the parties waive their rights to resolve disputes by jury trial, class action lawsuit, and any other non-small claims court: "You waive your rights to 1. Have juries resolve Disputes. 2. Have courts, other than small-claims courts, resolve Disputes.… You waive your rights to participate in a class action as a representative and a member. Only individual arbitration or small-claims courts will resolve Disputes." (Emphasis omitted.) These portions of the arbitration provision establish that all disputes not subject to the jurisdiction of a small claims court must be arbitrated, and nothing in these sections indicate that claims seeking injunctions or equitable relief are exempt from arbitration. Thus, to ensure that the remedies section is consistent with the arbitration provision as a whole, we

---

[8] Johnson does not assert that he opted out of arbitration after signing the Agreement.

conclude that the remedies section does not create an arbitration exemption for claims seeking injunctions or equitable relief.

¶41    Johnson argues that the remedies section must be interpreted as creating exceptions to the arbitration requirement because that section is located in the same portion of the arbitration provision as the exceptions for small claims disputes and informal dispute resolution.  According to Johnson, if the definition of "Disputes" includes claims for "pre-judgment seizure, injunctions, or equitable relief," then the remedies section would be rendered meaningless.  We disagree. First, the placement of the remedies section near exceptions to the arbitration requirement does not establish that claims seeking injunctions or equitable relief are also exempt from arbitration.  As explained, the context of the arbitration provision as a whole establishes that claims seeking injunctions or equitable relief are subject to arbitration, and we interpret the remedies section in a consistent manner.  Second, our interpretation of the arbitration provision does not render the remedies section meaningless.  As explained, the arbitration provision defines the types of claims that qualify as a "Dispute."  However, the definition of "Dispute" does not address the remedies that a party may seek from arbitration.  The remedies section fills in that gap by explaining that the parties can seek through arbitration not only money damages, but also pre-judgment seizure, injunctions, or equitable relief.  Thus, our interpretation gives separate meaning to the "remedies" section.

¶42    Johnson also argues that claims seeking injunctions or equitable relief are exempt because arbitrators have no authority to award injunctions or equitable relief under the arbitration provision.  Johnson points to a section of the arbitration provision that poses the question, "Are damages and attorney fees possible?" and that answers, "Yes, if allowed by law.  The Arbiter may award the

same damages as a court. Arbiters may award reasonable attorney fees and expenses, if allowed by law." According to Johnson, this language means that "Arbiters" may decide only claims seeking damages, attorney fees, and expenses, not claims seeking injunctions or equitable relief. We are not persuaded.

¶43 Under federal law, arbitrators ordinarily have broad authority to formulate remedies—including injunctions and equitable remedies—unless that authority is specifically limited by the arbitration agreement. *Continental Cas. Co. v. Certain Underwriters at Lloyds of London*, 10 F.4th 814, 821 (7th Cir. 2021) ("When an arbitration clause is silent about the scope of the arbitrators' power, we have cautioned that '[n]o negative inference can be drawn[.] ... Silence implies—given the tradition of allowing arbitrators flexible remedial discretion— the absence of categorical limitations.'" (citation omitted)); *Prate Installations, Inc. v. Chicago Reg'l Council of Carpenters*, 607 F.3d 467 (7th Cir. 2010) ("Arbitrators must have flexibility to determine remedies, and the 'authority to interpret and find a breach of the agreement implies the authority to prescribe a remedy to cure the breach.'"). For instance, the Ninth Circuit has held that an arbitration agreement authorized an arbitrator to issue equitable remedies even though the agreement was ambiguous as to such authority. *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1286 (9th Cir. 2009) ("Under the federal presumption in favor of arbitration, because the arbitration agreement is ambiguous, it should be interpreted as granting arbitration coverage over 'all disputes' arising from the Trademark Agreement. We hold that the arbitration agreement gave the arbitrator authority over all disputes, equitable and legal, and

that he did not exceed his authority by arbitrating equitable claims." (citation omitted)).[9]

¶44 In the present case, nothing in the arbitration provision purports to limit the arbitrators' authority to issue injunctions or equitable relief. That the arbitrators are permitted to award damages, attorney fees, and expenses does not establish that they are prohibited from awarding other types of remedies. Accordingly, we conclude that the arbitration agreement does not preclude arbitrators from issuing injunctions or equitable relief.

¶45 In sum, because the arbitration provision demonstrates that claims seeking injunctions or equitable relief are not exempt from arbitration, we conclude that Johnson is required to arbitrate his WIS. STAT. § 425.107 claim against Plaza.

## CONCLUSION

¶46 For the foregoing reasons, the order of the circuit court is affirmed.

*By the Court.*—Order affirmed.

---

[9] The respondents also point out—and Johnson does not dispute—that applicable model rules of arbitration permit arbitrators to award injunctive or equitable remedies. For example, the respondents point to Rules R-37(a) and R-44(a) of the American Arbitration Association Consumer Arbitration Rules as well as Rules 24(c) and 24(e) of the JAMS Comprehensive Arbitration Rules & Procedures.

Johnson also points to a number of statutes in the Wisconsin Consumer Act that he claims vest the sole authority to award certain types of relief with a court. However, as the respondents correctly observe, those statutes involve subject matters that do not apply here, including replevin, attachment, and garnishment. Thus, those statutes do not affect our conclusion that the arbitration provision does not prohibit arbitrators from awarding Johnson's requested relief.

This opinion will not be published. *See* W<small>IS</small>. S<small>TAT</small>. R<small>ULE</small> 809.23(1)(b)5.